NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4523-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

FRANCISCO CARDOSO, TROY
C. OGLESBY and CYBER BAIL
BONDS, LLC,

 Defendants,

and

FIRST INDEMNITY OF AMERICA
INSURANCE COMPANY,

 Surety-Appellant.
_____________________________

 Argued October 16, 2017 – Decided November 2, 2017

 Before Judges Messano and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Camden County.

 Samuel M. Silver argued the cause for
 appellant.

 Catherine Binowski, Assistant County Counsel,
 argued the cause for respondent (Christopher
 A. Orlando, Camden County Counsel, attorney;
 Ms. Binowski, on the brief).
PER CURIAM

 Appellant First Indemnity of America Insurance Co. is the

surety on a $50,000 bail bond that was forfeited when defendant

Francisco Cardoso failed to appear at a scheduled pre-arraignment

interview. First Indemnity appeals from an order denying its

motion to vacate the forfeiture and for its exoneration as the

surety, and directing remission of seventy-five percent of the

bail forfeiture. It claims it was entitled to exoneration or, in

the alternative, greater remission of the forfeiture. We disagree

and affirm.

 Cardoso was arrested on weapons and hindering apprehension

charges, and held on $50,000 bail. First Indemnity was the surety

on the bail bond that was posted on August 18, 2014, for

defendant's release.1

 Following the posting of the bond, defendant remained in

custody in the Camden County jail because he had a detainer lodged

by Immigration and Customs Enforcement (ICE).2 On August 27, 2014,

ICE took defendant into custody and removed him from the jail.

1
 The bond was posted by defendant Cyber Bail Bonds.
2
 In support of a motion First Indemnity later filed in this matter,
its licensed recovery agent certified that defendant was not
released from custody upon the posting of the bail bond because
"defendant had an Immigration and . . . Customs Enforcement (ICE)
hold."

 2 A-4523-15T1
Four months later, in late December 2014, defendant was deported

to Mexico.

 On July 17, 2015, defendant failed to appear for a scheduled

court event, a bench warrant was issued and the court ordered

forfeiture of defendant's bail. The court sent First Indemnity a

notice advising that the bail was forfeited and a default judgment

would be entered unless First Indemnity moved to set aside the

forfeiture within seventy-five days. First Indemnity took no

action and a $50,000 default judgment was entered on October 15,

2015.

 Three and one-half months later, First Indemnity moved to

vacate the forfeiture and default judgment, exonerate the surety

and discharge the bond. The motion was supported by First

Indemnity's license recovery agent's certification stating he

first received the file on January 27, 2016, and confirmed there

was an active bench warrant for Cardoso. Within six days, the

agent determined Cardoso was taken into ICE custody in August 2015

and subsequently deported.

 The court heard argument during two proceedings and, in an

oral decision, recognized Cardoso was not a fugitive when he was

taken into ICE custody. The court found First Indemnity failed

to monitor Cardoso following the posting of the bail bond and took

no action during the four months following Cardoso's removal from

 3 A-4523-15T1
the Camden County jail and prior to his deportation to ensure his

availability for the court proceedings on the pending criminal

charges. The court noted First Indemnity's failure to make any

recapture efforts until January 2016, thirteen months after

Cardoso was deported and seventeen months after he was taken into

ICE custody.

 The court acknowledged it would have been difficult for First

Indemnity to secure Cardoso's presence because he was in ICE

custody and subject to deportation. The court also found First

Indemnity failed to present any evidence showing it was impossible

to do so.

 The judge found First Indemnity was entitled to remission,

and granted in part First Indemnity's motion, concluding that

"remission should be [seventy-five] percent, given the fact that

there was a bond posted . . . . [First Indemnity] will have to

pay [twenty-five] percent of $50,000, which is $12,500[.]" The

court entered an order vacating the default judgment, discharging

the bond, and directing payment of $12,500. This appeal followed.

 First Indemnity contends it is entitled to exoneration

because Cardoso was never released from custody and was in ICE

custody until his deportation. It argues performance of its

obligations was therefore rendered impossible and, for that

reason, it is entitled to exoneration. It also argues it is

 4 A-4523-15T1
entitled to exoneration under general principles governing

remission. Last, it argues that the forfeiture ordered by the

court is not supported by law or facts.

 Rule 3:26-6 regulates bail forfeiture, the setting aside of

a forfeiture and remission.3 "[A] forfeiture may be vacated, 'in

whole or in part, if its enforcement is not required in the

interest of justice upon such conditions as [the court] imposes.'"

State v. Ventura, 196 N.J. 203, 213 (2008) (quoting R. 3:26-6(b));

see also State v. Peace, 63 N.J. 127, 129 (1973). Pursuant to

Rule 3:26-6(c), remission may be ordered in whole or in part in

the interest of justice "even after entry of judgment of default".

Peace, supra, 65 N.J. at 129; see also R. 3:26-6(c).

 We review a bail remission decision under an abuse of

discretion standard. Ibid. "[T]he decision to remit and the amount

of remission lies essentially in the [equitable] discretion of the

trial court." Ventura, supra, 196 N.J. at 213 (2008) (quoting

Peace, supra, 63 N.J. at 129).

 The exercise of that discretion must, however,
 be informed by the standards articulated by

3
 Rule 3:26-6 was amended effective September 1, 2017. The
amendments include changes to sections (b) and (c) which address
setting aside of orders of forfeiture and judgment, and remission
respectively. Because the court decided defendant's motion prior
to the effective date of the amended rule, we apply the prior
version. The parties do not argue otherwise. We offer no opinion
as to whether the amendments would otherwise affect the outcome
here.

 5 A-4523-15T1
 the courts in State v. Hyers, 122 N.J. Super.
 177, 180 (App. Div. 1973), and again in State
 v. Mercado, 329 N.J. Super. 265, 271 (App.
 Div. 2000), and must, moreover, be consistent
 with the policy concerns we identified in
 [State v. de la Hoya, 359 N.J. Super. 194, 198
 (App. Div. 2003)]. Paramount among them is
 the necessity to provide a reasonable
 incentive to the surety to attempt the
 recapture of the non-appearing defendant and
 to assure that the onus placed on commercial
 sureties is not so great as to risk the
 impairment of a defendant's realistic right
 to post pretrial bail.

 [State v. Harmon, 361 N.J. Super. 250, 254
 (App. Div. 2003).]

 "[T]he party seeking to set aside the judgment bears the

burden to prove that forfeiture is inequitable." Ventura, supra,

196 N.J. at 213; accord State v. Fields, 137 N.J. Super. 79, 81

(App. Div. 1975). In Ventura, the Court identified factors that

have been considered in determining if remission should be granted

or denied, including

 (a) whether the applicant is a commercial
 bondsman;

 (b) the bondsman's supervision, if any, of
 defendant during the time of his release;

 (c) the bondsman's efforts to insure the
 return of the fugitive;

 (d) the time elapsed between the date ordered
 for the appearance of defendant and his return
 to court;

 (e) the prejudice, if any, to the State
 because of the absence of defendant;

 6 A-4523-15T1
 (f) the expenses incurred by the State by
 reason of the default in appearance, the
 recapture of the fugitive and the enforcement
 of the forfeiture;

 (g) whether reimbursement of the expenses
 incurred in (f) will adequately satisfy the
 interests of justice.

 [Ibid. (quoting Hyers, supra, 122 N.J. Super.
 at 180).]

 The Court also explained that other factors have been

considered in assessing requests for remission. Id. at 213-14.

For example, a surety's lack of effort in locating the defendant,

the necessity of providing financial incentives to the surety to

recapture the defendant, and the surety's level of supervision of

the defendant prior to the failure to appear should be considered

in making a remission decision. Ibid. (citations omitted). The

Court further noted the factors and guidelines set forth in the

Administrative Office of the Courts' Remittitur Guidelines for

Superior Court and Municipal Courts must be considered in rendering

a remission decision.4 Id. at 215-16.

4
 The guidelines were revised following the Ventura decision. See
Philip S. Carchman, P.J.A.D., Acting Administrative Director of
the Courts, Supplement to Directive #13-04 (Oct. 9, 2007),
http://infonet.courts.judiciary.state.nj.us/wps/wcm/connect/e2ef
968041d340b080fe9e2e02aee3df/supp_dir_13_04.pdf?MOD=AJPERES&CACH
EID=e2ef968041d340b080fe9e2e02aee3df.

 7 A-4523-15T1
 The Court recognized that "our general principles concerning

bail remission are not a perfect fit when a defendant is deported

from the United States while on bail." Id. at 216. Under the

Guidelines, a deported defendant would "come within the first

starting point that presumes remission is not appropriate because

the defendant essentially remains a fugitive." Ibid. The Court

however reasoned that any impossibility of securing a defendant's

presence that exists because of deportation should play a role in

determining a "surety's motion for remission and in the appropriate

case, relief may be granted." Ibid.

 The Court found that a remission decision is "fact-driven and

involves consideration of a multitude of factors." Id. at 218.

The Court held that "[i]n most cases, remission of bail will not

be appropriate unless the defendant has been returned to the

jurisdiction of the court." Ibid. However, where deportation is

the sole reason a defendant cannot appear, "a crucial factor" that

must be considered is whether the defendant was a fugitive at the

time he or she was captured and then deported. Ibid. Where a

defendant was a fugitive who was captured and deported, "remission

generally should be denied." Ibid. However, where, as here, the

defendant was otherwise "compliant with the terms of his or her

release" and was then deported, "some degree of remission should

be considered." Ibid.

 8 A-4523-15T1
 Moreover, in State v. Poon, 244 N.J. Super. 86 (App. Div.

1990), we identified factors that should be considered in

determining remission where the defendant fails to appear because

of deportation:

 (1) whether "the indictment was dismissed for
 reasons not related to [the] defendant's non-
 appearance";

 (2) "the State's position regarding the need
 for defendant's return to the forum for
 prosecution" including, "if the State elects,
 for example, not to extradite or return [the]
 defendant for prosecution . . . when it can";

 (3) any "prejudice" to the State by the
 "defendant's non-appearance at the trial" of
 any codefendant; and

 (4) "[t]he efforts of the defendant and the
 surety to return [the] defendant to this
 jurisdiction."

 [Id. at 101-02.]

In Ventura, the Court further explained a surety's obligation to

make efforts to obtain the return of a defendant who has been

deported: "[a] surety's essential responsibility is to guarantee

not only the defendant's appearance at the scheduled court

proceedings, but that if the defendant is deported to make every

effort to re-apprehend the defendant." Ventura, supra, 196 N.J.

at 221.

 Applying these principles, we discern no basis to reverse the

court's discretionary decision ordering remission. The motion

 9 A-4523-15T1
court expressly considered that Cardoso was not a fugitive when

he was taken into ICE custody and subsequently deported.

Consistent with the holding in Ventura, the motion court recognized

that "some degree of remission" was required and ordered a

substantial remission of seventy-five percent of the bail bond.

See ibid. We reject First Indemnity's contention that because

Cardoso was never released from the Camden County jail and was

compliant with the conditions of his release on bail that

exoneration was required because production of defendant was

impossible. Its position is inconsistent with the holding in

Ventura that only some level remission is required where a surety

fails to produce a defendant who was not a fugitive when taken

into custody and deported. Ibid.

 Moreover, in Poon we found that "[t]he efforts of the

defendant and the surety to return defendant to this jurisdiction

are relevant in determining the equities" of a remission motion

where the defendant was deported. Poon, supra, 244 N.J. Super. at

102. We noted that in weighing the surety's efforts the court

must consider whether the surety took steps "to prevent deportation

until after [the] defendant's" court appearances or "to request a

delay of the immigration proceedings until after disposition of

the charges here." Ibid.

 10 A-4523-15T1
 Here, First Indemnity took no action concerning Cardoso's

deportation proceedings to ensure his appearance in court. Cardoso

was in ICE custody for four months prior to his deportation and

First Indemnity failed to act. We are unpersuaded by First

Indemnity's argument that it did not take any action because the

State failed to notify it that Cardoso was in ICE custody. It was

First Indemnity's failure to monitor defendant and not any failure

of the State that resulted in First Indemnity's ignorance of

defendant's status. The record shows there was an ICE detainer

against defendant at the time the bail bond was posted, and First

Indemnity never monitored Cardoso's whereabouts until it made its

motion to vacate the default judgment seventeen months after the

bond was posted.

 The record also shows the court carefully considered the Poon

factors and First Indemnity's failure to make any effort to ensure

Cardoso's appearance. The court found one Poon factor in favor

of granting remission: the State did not seek to extradite Cardoso.

The court found the third Poon factor, prejudice to codefendants,

inapplicable. The court, however, found two factor's that weigh

against remission: the indictment was dismissed solely due to

Cardoso's nonappearance and First Indemnity failed to make any

effort to return Cardoso to the jurisdiction.

 11 A-4523-15T1
 The court also assessed the Hyers and Guideline factors.5

Hyers, supra, 122 N.J. Super. at 180. The court found the

following factors weighed against remission: First Indemnity was

a commercial surety, First Indemnity failed to supervise and

monitor Cardoso, First Indemnity took no steps to secure Cardoso's

return or appearance, and the State was prejudiced in its ability

to prosecute. The court also found other factors were either

inapplicable (e.g., the time that elapsed between the date ordered

for Cardoso's appearance and his return), or supported remission

(e.g., the absence of evidence showing expenses incurred by the

State).

 In sum, we are satisfied the record supports the court's

findings and its careful application of the remission standards.

There has been no showing the court's decision rests on an

impermissible basis and First Indemnity fails to satisfy its burden

of showing the forfeiture is inequitable. See Ventura, supra, 196

N.J. at 213. We therefore conclude the court did not abuse its

discretion in ordering a seventy-five percent remission of the

bail bond. See United States v. Scurry, 193 N.J. 492, 504 (2008)

(finding there is an abuse of discretion where a "decision [is]

5
 The court addressed the factors at the first of the two days of
oral argument on First Indemnity's motion.

 12 A-4523-15T1
made without a rational explanation, inexplicably depart[s] from

established policies, or rest[s] on an impermissible basis").

 Affirmed.

 13 A-4523-15T1