747 A.2d 785 (2000)
329 N.J. Super. 265
STATE of New Jersey, Plaintiff-Respondent,
v.
Daniel MERCADO, Defendant, and
Allegheny Mutual Casualty Company, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Ismael Garcia, Defendant, and
Allegheny Mutual Casualty Company, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
John Torres, Defendant, and
Allegheny Mutual Casualty Company, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 2000.
Decided March 24, 2000.
*787 Samuel M. Silver, North Brunswick, for defendant-appellant.
Donna M. Whiteside, Assistant Camden County Counsel, for plaintiffs-respondents (Robert G. Millenky, County Counsel, attorney; Ms. Whiteside, on the brief).
Before Judges SKILLMAN, D'ANNUNZIO and NEWMAN.
*786 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Allegheny Mutual Insurance Company (Allegheny), a commercial bail bond company, appeals from judgments in favor of Camden County and the State ordering the forfeiture of ninety percent of the recognizance bonds posted by Allegheny in three separate criminal cases. Because the facts of the three cases are similar and the appeals present essentially the same issue, we consolidate the appeals and issue a single opinion.
Allegheny posted $10,000 bail for defendant John Torres on March 18, 1998. Torres failed to appear in court on April 24, 1998. As a result, the clerk of the court sent a notice to Allegheny on May 13, 1998 that bail had been forfeited and a warrant issued for Torres' arrest, and that Allegheny had twenty days within which to initiate proceedings to set aside the forfeiture. Allegheny did not respond to this notice. Torres was arrested by officers of a local police department and returned to the Camden County jail on August 26, 1998. It is undisputed that Allegheny did not play any part in Torres' arrest.
Allegheny posted $5,000 bail for defendant Daniel D. Mercado on October 30, 1997. Mercado failed to appear in court on March 30, 1998. As a result, the clerk of the court sent a notice to Allegheny on April 23, 1998 that bail had been forfeited and a warrant issued for Mercado's arrest, and that Allegheny had twenty days within which to initiate proceedings to set aside the forfeiture. Allegheny did not respond to this notice. On October 20, 1998, Allegheny found out that Mercado was incarcerated in the Camden County jail. The record does not indicate the circumstances or the date of Mercado's return to custody. However, it is undisputed that Allegheny did not play any part in apprehending Mercado.
Allegheny posted $20,000 bail for defendant Ismael Garcia on December 24, 1997. Garcia failed to appear in court on April 6, 1998. As a result, the clerk of the court sent a notice to Allegheny on May 4, 1998, that bail had been forfeited and a warrant issued for Garcia's arrest, and that Allegheny had twenty days within which to initiate proceedings to set aside the forfeiture. Allegheny did not respond to this notice. Allegheny was informed in October of 1998 that Garcia had been arrested by law enforcement officers and returned to the Camden County jail. It is undisputed that Allegheny did not play any part in Garcia's arrest.
In each of the three cases, Camden County filed a motion for a judgment of forfeiture against the defendants and Allegheny. Allegheny responded by filing cross-motions to vacate the forfeiture and exonerate Allegheny from its obligations under the bonds. After oral argument, the trial court entered judgments against Allegheny for ninety percent of the amount of the bonds, relieving Allegheny of liability for the remaining ten percent. In denying Allegheny any additional relief, the court emphasized that Allegheny failed to show that it made any substantial efforts to locate and apprehend the defendants after they became fugitives, and that a substantial period elapsed before the defendants were returned to custody.
Allegheny has appealed from the judgments. Camden County has not cross-appealed from those parts of the judgments which provide for remission to Allegheny of ten percent of the bonds.
Bail is governed by Rule 3:26, which requires "[a] person admitted to bail ..., *788 together with that person's sureties, [to] sign and execute a recognizance [which] shall be conditioned upon the defendant's appearance at all stages of the proceedings until final determination of the matter." R. 3:26-4(a). "[S]uch a recognizance of bail is an obligation of record entered into before a person authorized to take bail, conditioned upon the appearance of the accused at all stages of the proceedings until final determination of the matter." State v. Rice, 137 N.J.Super. 593, 598, 350 A.2d 95 (Law Div.1975), aff'd o.b., 148 N.J.Super. 145, 372 A.2d 349 (App.Div. 1977). A surety may be exonerated of its obligations under the recognizance "by a timely surrender of defendant into custody." R. 3:26-7.
Bail forfeiture is governed by Rule 3:26-6, which provides that upon breach of a condition of a recognizance, the bail bond shall be forfeited, R. 3:26-6(a), but that the court may direct the forfeiture to be set aside if its enforcement is not required in the interest of justice. R. 3:26-6(b). If the forfeiture is not set aside, the court also may remit the bail in whole or in part in the interest of justice. R. 3:26-6(c).
A party seeking to set aside or remit a forfeiture bears the burden of proving that "it would be inequitable to insist upon forfeiture and that forfeiture is not required in the public interest." State v. Childs, 208 N.J.Super. 61, 64, 504 A.2d 1212 (App.Div.), certif. denied, 104 N.J. 430, 517 A.2d 423 (1986). The determination whether to relieve an obligor of a forfeiture is committed to the sound discretion of the trial court. State v. Peace, 63 N.J. 127, 129, 305 A.2d 410 (1973).
In State v. Hyers, 122 N.J.Super. 177, 180, 299 A.2d 748 (App.Div.1973), this court identified seven factors that a trial court may consider in determining whether a forfeiture should be remitted in whole or in part:
(a) whether the applicant is a commercial bondsman; (b) the bondsman's supervision, if any, of defendant during the time of his release; (c) the bondsman's efforts to insure the return of the fugitive; (d) the time elapsed between the date ordered for the appearance of defendant and his return to court; (e) the prejudice, if any, to the State because of the absence of defendant; (f) the expenses incurred by the State by reason of the default in appearance, the recapture of the fugitive and the enforcement of the forfeiture; (g) whether reimbursement of the expenses incurred in (f) will adequately satisfy the interests of justice.
In Peace, supra, the Supreme Court implicitly approved the factors identified in Hyers, but also noted that "[t]here is an intangible element of injury to the public interest in almost any case where a defendant deliberately fails to make an appearance in a criminal case." 63 N.J. at 129, 305 A.2d 410.
Allegheny argues that the trial court erred in ordering the forfeiture of ninety percent of the amount of the recognizance bonds posted for defendants, because the county failed to present any evidence that the prosecution was prejudiced as a result of the defendants' failures to appear in court or that the State incurred any added expense in locating, apprehending and returning the defendants to custody. Allegheny argues that because Hyers indicates that prejudice to the prosecution and the added expense incurred by the State as a result of a defendant's failure to appear in court are relevant factors in determining whether a court should set aside or remit a forfeiture of bail, 122 N.J.Super. at 180, 299 A.2d 748, it is incumbent upon the county to present evidence of these factors to justify a forfeiture. We conclude that the county does not have the burden to present such evidence, at least in a case where the surety fails to demonstrate that it made reasonable efforts to secure the defendant's return to custody and the defendant remains a fugitive for a substantial period of time. Consequently, the trial court did *789 not abuse its discretion in entering judgments of forfeiture for ninety percent of the amount of the bonds posted by Allegheny.
"[T]he purpose of bail is to secure the release of the accused from imprisonment pending disposition of the charge and to assure his presence in court when lawfully required in connection with that charge." Rice, supra, 137 N.J.Super. at 599, 350 A.2d 95. A "recognizance of bail ... executed by a surety amounts to a contract between that surety and the State." Id. at 600, 350 A.2d 95. Under such a contract, when a criminal defendant, as the principal under the bail bond, defaults on his obligation to appear in court when lawfully required, the surety is obligated to locate, apprehend and return the defendant to custody. Id. at 600-01, 350 A.2d 95. Therefore, if a surety seeks a partial or total remission of a forfeiture of bail, it bears a heavy burden to show that it has satisfied its essential obligation under the recognizance to secure the defendant's return to custody, and in the absence of this showing, the trial court may determine that the forfeiture should stand. See Childs, supra, 208 N.J.Super. at 64, 504 A.2d 1212; State v. Fields, 137 N.J.Super. 76, 81, 347 A.2d 810 (App.Div. 1975). This is not to say that the court should disregard the other factors identified in Hyers. However, the court's primary focus, especially when the defendant has remained a fugitive for a significant period of time, should be upon the surety's efforts to secure the defendant's return, rather than upon the expenses incurred by the State as a result of the defendant's failure to appear or the prejudice to the State's case caused by the defendant's absence. See Childs, supra, 208 N.J.Super. at 64, 504 A.2d 1212; see also United States v. Amwest Surety Ins. Co., 54 F.3d 601, 603 (9th Cir.1995) (noting that "[t]he government's failure to show `prejudice, cost or inconvenience' will not mandate remission.") (citation omitted); Commonwealth v. Mrozek, 703 A.2d 1052, 1054 (Pa.Super.Ct.1997) ("The prime considerations of the trial court in determining whether remission is appropriate are the result and the extent of the bondsman's efforts.") (citation omitted).
Applying these principles, this court determined on remand in Hyers that justice required a partial remission of the bail bond, because the guarantors "made all reasonable efforts to locate defendant which ultimately bore fruit, and the State suffered no prejudice." State v. Hyers, 126 N.J.Super. 259, 260, 314 A.2d 72 (App. Div.1973). We then considered the expense incurred by the State as a result of the defendant's default in appearing in court to determine what portion of the bond to remit. Ibid. Similarly, in Peace, supra, the Supreme Court affirmed a partial remission of a forfeiture where "[t]he surety ... discovered [the defendant's] whereabouts outside the state and persuaded her to return to court." 63 N.J. at 129, 305 A.2d 410. In contrast, in Childs, supra, 208 N.J.Super. at 64, 504 A.2d 1212, we affirmed the denial of a motion to vacate the forfeiture of a $15,000 bail posted by a defendant's mother, noting that "there was no indication [she] played any role whatsoever in assisting the State in locating defendant." The court in State v. Singletary, 170 N.J.Super. 454, 457, 406 A.2d 1003 (Law Div.1979) also refused to order remission of any portion of the bail bond, because the surety made no efforts to secure the defendant's return to custody and thus was "in no fashion responsible for discovering [the defendant] or securing his return."
In the three cases involved in this appeal, Allegheny failed to show that it made any active efforts to locate, apprehend and return the defendants to court. In the case of Garcia, Allegheny submitted an affidavit which alleged that after Garcia failed to appear in court, the matter was assigned to "recovery agents" who were assigned responsibility "to locate, apprehend and surrender him to the Camden County Jail." Allegheny also submitted a *790 report of one of the agents that Garcia's grandmother informed him by telephone on October 13, 1998, six months after Garcia absconded, that he had been arrested by a Camden detective. In the case of Torres, Allegheny submitted an affidavit which simply alleged that after Torres failed to appear, it retained an "Agent ... to locate, apprehend and surrender the defendant to law enforcement officers," and that the agent "learned" on October 20, 1998, six months after Torres absconded, that he had been surrendered to the Camden County Jail by the Pennsauken Police Department on August 26, 1998. Similarly, in the case of Mercado, Allegheny simply alleged that the agent it retained to locate and apprehend him "learned" on October 20, 1998, that "defendant had been surrendered to the Camden County Jail." However, Allegheny failed to present any evidence that its agents undertook active efforts to locate and apprehend any of the defendants, and it is undisputed that its agents played no part in actually returning the defendants to custody. Therefore, Allegheny failed to discharge its primary obligation under the bail bonds, and in view of the substantial period of time that elapsed before defendants were apprehended, we are satisfied that the trial court did not abuse its discretion in ordering the forfeiture of ninety percent of the bail bonds posted by Allegheny.
Affirmed.